IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RICHARD DAWAYNE HOLT

       Plaintiff,

                                       3:14-CV-01010-PK

                                       FINDINGS AND

v.                                   RECOMMENDATION

CAROLYN W. COLVIN,
Commissioner of Social Security,

       Defendant.

_____

PAPAK, Magistrate Judge:

     Plaintiff Richard Dawayne Holt filed this action June 23, 2014, seeking judicial review of

the Commissioner of Social Security's final decision denying his applications for supplemental

security income ("SSI") under Title XVI of the Social Security Act (the "Act") and for Disability

Insurance benefits under Title II of the Act.   This court has jurisdiction over plaintiff's action

pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Page 1 - FINDINGS AND RECOMMENDATION

Holt argues that by erroneously rejecting medical evidence and erroneously rejecting his testimony regarding the extent of his impairments, the Commissioner failed properly to assess his residual functional capacity after completing step three of the five-step sequential process for analyzing a Social Security claimant's entitlement to benefits, and for that reason erred by finding Holt capable of performing work as a cashier II, agricultural sorter, and final assembler at step five of the process.

I have considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's decision should be affirmed and this case should be dismissed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See*

Page 2 - FINDINGS AND RECOMMENDATION

*Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b).  Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 416.920(a)(4)(ii).  An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c).  The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at 141.  If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c).  Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*, *quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).  If the claimant's impairments are equivalent to one of the impairments enumerated

in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

Page 4 - FINDINGS AND RECOMMENDATION

economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence

of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD[2]

Holt was 46 years old on his alleged onset date of July 20, 2010. Tr. 156.[3] He completed eleventh grade, and received no subsequent formal education or vocational training. Tr. 32. According to the evidence of record, prior to his claimed disability onset date Holt had substantial gainful activity as a pizza baker, food sales clerk, warehouse worker, stock clerk, cashier checker, retail lead supervisor manager, general hardware sales person, and forklift driver.

### A. The Medical Record

Brief chart notes from February 2005 through October 2006 document chronic back pain and pancreatitis. Tr. 286-302.

On May 12, 2010, Holt was seen at the Marshall County Family Medical Center (MCFMC) for stabbing pain in the low back pain after lifting 30-40 pounds of dough at work. Tr. 248. He returned on May 26 with increased pain and nausea. Tr. 246.

---

[2] The following recitation constitutes a summary of the evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 12.

A May 28 MRI of the lumbosacral spine showed mild focal reversal of the normal lordotic curvature centered at L2-3, multilevel degenerative disc disease, and multilevel mild spondylotic changes in the posterior facets. Tr. 271, 483-88.

On May 30, Holt was seen at the MCFMC for lumbar radiculopathy in the right leg and lumbar sprain/strain. Tr. 237. It was noted he was unable to work until at least September 30, 2010. He had lower back pain with right leg numbness, and was unable to do any lifting, bending, or stooping. He could not stand for more than 15 minutes, and could sit to drive for no longer than an hour. Tr. 238. He had muscular weakness, pain, stiffness, depression and anxiety.

On July 12, Holt's pain was bad and occasionally radiating down the right leg. He had three physical therapy sessions, and after the last one his lower back pain increased. Tr. 245. Stretching made the pain worse, but electrical stimulation helped short term. Holt had trouble sleeping, weakness, pain, stiffness, numbness, and depressed mood.

On July 20, Holt had tight tender lumbar muscles, his back pain was constant and getting worse, and he was unable to do check out/cashier work. Tr. 244.

On July 30, Holt was seen at MCFMC with "tight tender muscles in both lumbar paraspinal groups." Tr. 241. Multiple levels of degenerative disc disease, new on a May 2010 MRI, compared to a May 2005 MRI, were seen. Lortab was prescribed, with rest and home exercises. Depression, anxiety, weakness, pain, and stiffness were observed. Tr. 242.

On August 16, Holt returned to MCFMC and lumbar tenderness and spasm were noted. Tr. 239. Lumbar degenerative disc disease was "worse on MRI 2010 v. 2005." *Id.* Lower back pain was not improved with being off work, he could not stand for more than a few minutes. Tr. 240. He was prescribed Melixicam, Tramadol for breakthrough pain, and Lortab.

Page 7 - FINDINGS AND RECOMMENDATION

On October 15, Holt stated he had moderate relief from pain killers, but it was painful to care for himself, and he could not lift or carry anything. Tr. 270. He could walk one-quarter mile, sit and stand 30 minutes, and sleep less than four hours. He could manage automotive journeys of two hours, and his pain was gradually worsening. *Id.* On October 26, Lief J.S. Choi, D.C., completed a form in which he opined Holt was temporarily totally disabled through November 9, 2010, due to moderate to severe neck and low back/leg pain. Tr. 275.

On an October 28 pain questionnaire Holt reported his pain was 6 out of 10, and he had pain 75% of the time. Tr. 268. On November 4, Holt reported a pain level of 5 out of 10, with pain 75% of the time in the lower back. Tr. 267.

On November 10, 2010, Holt completed an Adult Function Report in which he said pain kept him awake and wakes him when he sleeps. Tr. 203. Holt stated it hurts to bend over to put on socks and pants, and when getting into or out of the bath. He prepares sandwiches and frozen dinners daily, but is no longer able to prepare full meals. Tr. 204. He does the dishes about twice a week. It takes about 25 minutes and he requires help to put them away because he can't push, pull, or lift without pain. Tr. 205. He drives occasionally, but does not go shopping. He watches television for about 30 minutes at a time. Tr. 206. He no longer goes fishing, and has no social activities. He can walk for about ten minutes before requiring 20 minutes of rest. Tr. 207. His ability to pay attention varies with his pain level. He is afraid he will never be able to work again or be normal. Tr. 208. His gabapentin and flexeril cause dizziness. *Id.*

A physical therapy note of November 12 indicates the first two therapy appointments helped but the third did not. Tr. 259. On a Physical Activity Questionnaire on that date Holt indicated he had moderate relief from pain with medication, it was painful to look after himself

and he was slow and careful, and he could lift only very light weights. Tr. 266. Pain prevented him from walking more than one-quarter mile and from sitting or standing more than 30 minutes. Holt reported he slept less than four hours, and pain restricted his social life. He could manage journeys of less than one hour. Holt stated his pain was getting better slowly. *Id.*

On December 20, 2010, Holt saw Maura O'Leary, M.D., to establish care. Tr. 330-33. Dr. O'Leary diagnosed chronic pain syndrome, back pain, and tobacco use disorder. Tr. 330. Holt reported the pain radiating down his leg had resolved, but the back pain remained. Dr. O'Leary noted Holt was "sitting in a position that suggests discomfort." Holt declined a referral to physical therapy due to his prior experience with it, and accepted a referral to Pain Management Group and Behavioral Medicine. Tr. 332.

David Murphy, M.D., conducted a consultative examination of Holt on January 19, 2011. Tr. 311-13. Dr. Murphy reviewed unspecified records, including the May 2010 MRI. Tr. 311. Holt reported constant low back pain which averaged 6/10, was 3/10 at best, and occasionally 8-9/10. The pain was in the small of his back and radiated towards his hips. He had occasional pain into the right buttocks and down the right leg to the knee. Holt thought his condition was getting progressively worse, and he had difficulty with prolonged standing, sitting, lifting, or bending. *Id.* He was taking gabapenten, flexeril, hydrocodone, and tramadol.

Holt reported he could sit 30-60 minutes before he had to change positions. He could stand and walk for 30-60 minutes before he has to sit. He alternated lying down between sitting and standing. His biggest relief came from lying flat on his back. He lifted 10-15 pounds, and did some food preparation, but no shopping. Tr. 312.

Dr. Murphy noted Holt "appears somewhat uncomfortable with ambulation." *Id.* He walked with a deliberate wide-based gait with little arm swing. Heel walking caused increased pain in the right hip. He was able to toe walk , but squatting was difficult. Dr. Murphy concluded Holt could stand/walk 45 minutes at a time, or six hours in an eight-hour day, sit 45 minutes at a time, or six hours in an eight-hour day, and lift/carry 15 pounds. Tr. 313.

On February 7, 2011, William Habjan, D.O., reviewed the record and found Holt not disabled. Tr. 70. This opinion was confirmed by Jill R. Lepire. *Id.*

On February 25, Holt was examined by Pamela Kirwin, M.D., at the Oregon Health Sciences University Comprehensive Pain Center. Tr. 317-28. Dr. Kirwin noted Holt's radiating leg pain on the right "likely represents a radiculitis at L5 nerve root." Tr. 317. His other signs, symptoms and imaging indicated facet arthropathy caused his back pain. Holt was taking flexeril, gabapentin, hydrocodone-acetaminophen, lisinopril, simvastatin, and tramadol. Tr. 318. Dr. Kirwin diagnosed low back pain, lumbago, lumbosacral spondylosis without myelopathy, and thoracic or lumbosacral neuritis or radiculitis, unspecified. Tr. 322. She recommended a transforaminal epidural steroid injection at level L5-S1 for radiculitis, Lyrica, Cymbalta, physical therapy, and a TENS unit. "I would also suggest a flexion-extension film to further describe why his facet arthropathy is so severe at this level, and I am suspicious that in motion, he has some impingement here given his cluster of symptoms." *Id.* Dr. Kirwin noted that Holt wanted to return to work.

On March 2, 2011, Dr. O'Leary diagnosed chronic pain syndrome, chest pain, esophageal reflux, lumbosacral spondylosis without myelopathy, and lumbosacral radiculitis. Tr. 340. She

prescribed vicodin, Lyrica, and Cymbalta. Tr. 341. Holt's insurance denied coverage for Lyrica. Tr. 361. On April 20, Holt's insurance denied coverage for steroid injections. Tr. 370.

On September 20, Wendy Noreen, ANP, noted severe low back pain and depression with insomnia. Tr. 420. She discontinued the Norco and prescribed Percocet. Tr. 421. Holt was anxious, depressed, and frustrated. On September 24, Morganna Wolf, MSW, noted that she was changing Holt's social work visits from one hour to one half an hour because Holt "has difficulty sitting for long periods of time." Tr. 422.

On October 17, Nurse Noreen noted "obvious severe distress," and Holt walked slowly and cautiously. Tr. 414. His lumbar spine was exquisitely tender.

On October 31, 2011, Holt began a four week physical therapy program in which he met with a therapist twice a week. Tr. 411.

On November 28, 2011, Holt reported to Barbara Fordyce, RN, that he had an altercation with his niece's boyfriend in which he picked the boyfriend up and threw him across the room. Tr. 395. Holt had spent the two days since in bed. Holt was anxious and wanting to isolate.

On December 15, 2011, Romen Lu, PT, noted increased pain and that home exercises hurt. Mr. Lu felt that anxiety and insomnia issues needed to be addressed before physical therapy could be helpful. Tr. 391.

On December 22, Holt reported increased back pain. Tr. 385. He was observed to be "in obvious distress," his lumbar spine was exquisitely tender, he had difficulty sitting in a chair, and he was tearful. Tr. 386.

On December 29, 2011, Holt reported his stretching exercises made him sore, and he was encouraged to walk ten minutes at a time, twice each morning, and to do his stretching exercises in the morning with complete rest in the afternoon to minimize soreness. Tr. 384.

On February 13, 2012, Physical Therapist Lu reported Holt had increased range of motion, and was using a TENS unit when walking. Tr. 459-60. His functional index scores had improved from 20% to 47% despite no change in perceived pain levels. Holt continued to be frustrated and emotional, he could sit no more than one hour, and walk no more than one quarter mile. Tr. 460.

Ron Overmyer, PA-C, saw Holt on March 5, 2012. Tr. 369. Holt was in pain, and was given a Medrol Dose Pak, and referred to physical therapy. On March 19, Holt returned for follow up. He had taken all his pain medications and had been out of pain medicine for a couple of days. He was standing because it was more comfortable than sitting. Tr. 374. Overmyer noted "increased pain on simple mild palpation to central lumbar spine. Very poor ROM." *Id.* He was referred back to the pain clinic for re-evaluation. On March 22, Social Worker Wolf recorded symptoms of depression, anxiety, and PTSD, commenting that Holt has "a marked degree of restlessness." Tr. 448. On March 29, Social Worker Wolf commented that Holt had to leave his counseling session after about 30 minutes because he could sit no longer. Tr. 445.

On April 12, Holt reported leg pain and Mr. Overmyer saw "notable atrophy of the quads." Tr. 444. On April 16, Mr. Overmyer noted depressed affect, and Holt had chronic issues with sitting, and was seated on the left side to maintain pain relief. Tr. 443. On April 30, Nurse Henry noted "obvious significant discomfort," and Holt was self dosing and running out of medications. Tr. 440, 505.

On May 14, Social Worker Wolf advised Holt to walk daily for one block.  On May 30, 2012, Holt reported to Social Worker Wolf that he had attended a job interview, but was concerned he would hurt himself if working.  Tr. 435.

On June 7, Holt was discharged from physical therapy.  The therapist noted Holt was last seen in PT on February 22, and that "due to incompletion of care, functional goals were not met." Tr. 434.

On June 12, 2012, Sue Henry, FNP, found Holt no longer eligible for opioid medication through the pain management clinic due to multiple negative urine drug screens and medication agreement violations.  Tr. 431.  On June 21, Dr. O'Leary refused to prescribe narcotics for Holt. Tr. 531.

On July 26, 2012, Holt was seen by Kelly Oh, M.D.  Tr. 496.  Holt was taking morphine, simvastatin, lisinopril, Cymbalta, aspirin, Omeprazole, gabapentin, and Percocet.  *Id.*  Xrays of the lumbar spine revealed mild degenerative changes at L2-L3 and were otherwise unremarkable. Tr. 548.  On September 9, an MRI showed minimal changes at T11-12 and L2-3, "nearly identical" to the May 2010 MRI results.  Tr. 549.

On September 12, 2012, Dr. O'Leary completed a form prepared by counsel in which she noted that Holt's chronic pain syndrome likely impaired his sleep causing fatigue.  Tr. 473.  Dr. O'Leary asserted that Holt was moderately impaired in activities of daily living and social functioning.  Tr. 474.  She would expect him to miss work two to five days per month due to his symptoms.

On September 26, 2012, Dr. O'Leary completed a form prepared by counsel in which she notes her "responses are based on [patient] report and not specific testing."  Tr. 551.  Dr. O'Leary

opined that Holt would require extra rest breaks of about one hour per eight hour work day to relieve pain. *Id.* She stated he could sit for 30 minutes before changing position, and sit for no more than three hours in an eight hour work day. Tr. 551-52. Dr. O'Leary thought Holt could stand or walk for about three hours in a work day, and could work for 15-20 minutes before needing to walk for five minutes. Tr. 552. Dr. O'Leary opined that Holt has fatigue and confusion as a result of gabapentin and flexeril. Tr. 554.

**B. The Hearing Testimony**

On September 18, 2012, a hearing was conducted before an ALJ in connection with Holt's application. Tr. 26-61. Holt, his counsel, and a vocational expert were present. Tr. 26.

Plaintiff testified that in May 2010, while working at a gas station with a retail and pizza store, he injured his back. Tr. 32. His doctor put him on light duty, but there wasn't any actual light duty, and his doctor took him off work on July 20, 2010. Plaintiff worked about 30 days between his injury and July 20, 2010. He has not worked since July 20, 2010. Tr. 34. Plaintiff settled his Workers Compensation claim for $10,000 and regrets that settlement. The judge at the Workers Compensation hearing was influenced by a 2007 MRI which showed similar degenerative disc issues.

Plaintiff's back pain "disables me as far as walking very far. I mean, I've tried to walk over a block and I just, I can't do it." Tr. 34-35. Bending, stretching, any movement, twisting, causes back pain. Tr. 35. The pain is in the center of his spine, and radiates down his right leg. His leg goes numb, and sometimes he falls down.

Holt testified that he had back pain in 2007 but not this bad. He injured his back in May 2010 swinging a 30 foot long pole used to change gas price signs in 40 mph winds. *Id.* The only

Page 14 - FINDINGS AND RECOMMENDATION

relief from pain occurs when he lies on his right side in a fetal position. Tr. 36. If he is able to get some sleep, he wakes "feeling fair. Not feeling good and not feeling great, not feeling super bad, but enough that I can get up and drink a cup of coffee. But once I get up in a vertical position, within 30 minutes, this back pain comes and it's – so if I don't eat my medicine when I get up, I'm chasing the pain all day long." *Id.* The pain is constant, but he tries to help around the house. He can't reach up to do the dishes, or reach down to put pots and pans down. He can move glasses at waist level, but usually does not.

At the time of the May 2010 injury his symptoms were more severe and he was "on fire all the time." Tr. 37. He tried physical therapy twice a week for several months but it increased the pain. He lies on his side because he cannot lie on his back. *Id.* When the injury occurred he could lie on his back. Ice helps for a short period. He uses a TENS unit but 15-20 minutes after he turns it off the pain is back. He uses the TENS unit once or twice a week. Tr. 38. If he tries to vacuum or do dishes the pain increases and he has to lie down.

Holt felt pain in his leg the day after the injury when he climbed a flight of stairs and had pain shooting down his leg. The pain lasted a couple of months and then turned into numbness throughout the leg. At the time of the hearing he had not had the leg numbness for a couple of months. He has pain "like it's all on fire" if he is touched at the top of his buttocks. Tr. 40. Injections were recommended but Holt has not had them because they are not covered by insurance. There is no plan for surgery. He has not seen a neurologist.

Holt takes vicodin, gabapentin, cyclobenzaprine, Cymbalta, and amitriptyline daily. Tr. 42-43. He is depressed about his situation because "this has completely changed my life." Tr. 43. He is not seeing a counselor or therapist about depression. Tr. 44. He tried and felt

Page 15 - FINDINGS AND RECOMMENDATION

unwelcome. He saw one counselor he liked from about June 2011 to June 2012, and he thought that helped his depression. His depression started after the accident.

Holt can sit for 30 minutes before he becomes very uncomfortable and wants to lie down. Tr. 45. He can stand for 45-60 minutes from a lying position. He can stand for less time if he has been sitting before standing. Tr. 46. If he is allowed to change position between sitting and standing, he can stand for about an hour in a day, and then has to lie down for 20 minutes. *Id.* He can walk for less than five minutes before he needs to lie down. He cannot bend to unload the dishwasher without increased pain and he has to lie down. Tr. 47. It hurts to reach above his head even with a very light glass, and to cough. *Id.* He can carry a plate of food from one room to another, but cannot pick up a full gallon of milk. Tr. 48. If he drops his keys he bends his knees to get them because he cannot bend over. He seldom drives, because steering and the clutch cause back pain. Tr. 48-49.

Holt's last physical therapy was in June 2012. He would like to have more physical therapy but he and the therapist agreed he was "at a wall." Tr. 49. Morganna Wolf was his therapist. Tr. 50. He "can't really concentrate and stay focused" because of his back. *Id.* He watches television but loses track of the plot when his back hurts. Tr. 50-51. He can't remember things very well.

Frederick Cutler testified as a vocational expert. Tr. 51. He testified that a hypothetical individual of Holt's age, education and work experience, limited to the RFC assessed by the ALJ, would be unable to perform his past relevant work, but would be able to perform the requirements of certain sedentary occupations. Tr. 53. Mr. Cutler testified, however, that an individual who required a ten minute break every hour in addition to standard breaks would be

Page 16 - FINDINGS AND RECOMMENDATION

unable to sustain employment.  Tr. 56.  Mr. Cutler further testified that an individual who would

be absent from work approximately three times per month would be unable to sustain

competitive employment.  *Id.*

On October 10, 2012, the ALJ issued a decision finding Plaintiff not disabled.  Tr. 10-

21.  Holt requested review of the ALJ's decision, Tr. 7-9, and the Appeals Council denied his

request on April 22, 2014. Tr. 1-6.  In consequence, the ALJ's decision of October 10, 2012,

became the Administration's final order for purposes of judicial review.  *See* 20 C.F.R. §

422.210(a); *see also*, *e.g.*, *Sims v. Apfel*, 530 U.S. 103, 107 (2000).  This action followed.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the Administrative Law

Judge found that Holt did not engage in substantial gainful activity at any time following his

claimed disability onset date of July 20, 2010.  Tr. 15.  The ALJ found Holt's date last insured

was December 31, 2015.  He therefore proceeded to the second step of the analysis.

At the second step, the ALJ found that Holt's medical impairments of degenerative disc

disease, chronic pain syndrome, and depression were "severe" for purposes of the Act.  *Id.*

Because the impairments were deemed severe, the ALJ properly proceeded to the third step of

the analysis.

At the third step, the ALJ found that none of Holt's impairments was the equivalent of

any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1.  Tr. .  The ALJ therefore

properly conducted an assessment of Holt's residual functional capacity.   Specifically, the ALJ

found Holt had the capacity to perform sedentary work, except he could never climb ladders,

ropes and scaffolds, but could occasionally climb ramps or stairs. Tr. 16-17.  He could not stoop

Page 17 - FINDINGS AND RECOMMENDATION

or kneel, but could occasionally crouch and crawl. Tr. 17. Plaintiff was limited to simple, routine, repetitive tasks with one-to-two step instructions. He must be allowed to change from sitting to standing or vice versa one time per hour while at the workstation. Tr. 17.

At the fourth step of the five-step process, the ALJ found that Holt had past relevant work as a pizza baker, food sales clerk, warehouse worker, stock clerk, cashier checker, retail lead supervisor manager, general hardware sales person, and forklift driver, all light to medium exertion jobs. Tr. 19. At step five, the ALJ relied on the testimony of a Vocational Expert (VE) and determined there were jobs in the national economy that Holt can perform, including cashier II, agricultural sorter, and final assembler. Tr. 20. On that basis, the ALJ concluded that Holt was not disabled as defined in the Act at any time between July 20, 2010, and October 12, 2012. *Id.*

## ANALYSIS

Holt argues that the Administrative Law Judge improperly (1) failed to credit Holt's own testimony regarding the severity of his symptoms ; (2) improperly rejected medical opinion; and (4) improperly relied on the VE.

## I.    Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F3d at 724. *See also Holohan v. Massinari,* 246 F3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (l) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F3d at 1282.

The ALJ found Plaintiff not fully credible as to the intensity, persistence, and limiting effects of his symptoms to the extent they are inconsistent with the residual functional capacity assessment. Tr. 17. The ALJ noted the minimal objective evidence to support Plaintiff's symptom allegations. The ALJ cited the May 2010 MRI which showed multilevel degenerative

disc disease and mild spondylotic change. Tr. 17-18, 271. The degenerative changes were described as "minimal to mild." Tr. 271. A September 2012 MRI again showed only minimal degenerative changes. Tr. 19, 549. The Commissioner correctly notes that "the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001). The minimal objective evidence of physical abnormalities is a valid reason to find Plaintiff less than fully credible.

The ALJ stated Plaintiff was less than fully credible because "[t]he claimant's pursuit of work and his ability to throw an individual across a room are not consistent with his allegations of debilitating pain. While he expressed some concerns that he would hurt himself if he worked, his attendance at a job interview suggest[s] he believed he could work despite his symptoms." Tr. 19.

The record indicates that Plaintiff had a flare of increased back pain after throwing someone out of his house. Tr. 390-92. This incident does not indicate Plaintiff was less than fully credible about his back pain.

In June 2012, Plaintiff told his social worker that he had gone to a job interview. Tr. 435. He expressed concern that he would hurt himself if working. The Social Security Act has provisions for disabled claimants to do trial work periods. 20 C.F.R. § 404.1592. Plaintiff's job interview is not a clear or convincing reason to find him less than fully credible as to his pain or limitations.

The ALJ noted Plaintiff exhibited drug-seeking behavior, which is a valid reason to find Holt less than fully credible. *Edlund v. Massanari,* 253 F.3d 1152, 1157 (9th Cir.2001).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund,* 253 F.3d at 1156. The ALJ's determination that Holt was not fully credible as to the extent of his pain and limitations is supported by clear and convincing reasons and substantial evidence and should be affirmed.

## II. Medical Opinions

An ALJ may properly reject a treating physician's uncontradicted medical opinion only for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). When the treating physician's opinion has been contradicted, however, it may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *See Megallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As set out above, Dr. O'Leary opined that Holt had multiple disabling limitations. The ALJ cited Dr. O'Leary's statement that Holt would miss work two to five days per month, and found that statement contradicted by the January 2011, opinion of examining physician Dr. Murphy. Tr. 19. The ALJ noted Dr. O'Leary did not provide an explanation for her opinion that Holt would have frequent absences, and that her assessment is not consistent with the objective medical evidence. Finally, the ALJ noted Dr. O'Leary's September 26, 2012, opinion is entitled to little weight because it is based on Holt's subjective, and reasonably rejected, statements.

Plaintiff contends that Dr. O'Leary's opinion is due more weight as the treating doctor with a longitudinal treating relationship. However, the medical records reveal that Holt actually saw Dr. O'Leary three times, to establish care in December 2010 (Tr. 330-33) on January 11, 2011, and on March 2, 2011. Tr. 340, 349. The balance of Holt's care came primarily from PA-C Overmyer.

An ALJ may reject a physician's opinion predicated upon reports of a claimant found not credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2009). On this record, the ALJ articulated clear and convincing reasons to reject Dr. O'Leary's opinion, and that determination should be found supported by substantial evidence.

## III. Step Five

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.(a)(4)(v). The ALJ may take administrative notice of the occupational data contained in the *Dictionary of Occupational Titles ("DOT"),* or draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. §§ 404.1566(d-e); 416.966(d-e). The ALJ's questions to the vocational expert must include all properly supported limitations, *Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001), and the ALJ must ask the vocational expert whether her testimony is consistent with the *DOT. Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Failure to inquire is harmless if the vocational expert "provided sufficient support for her conclusion so as to justify any potential conflicts," or if no conflict arises. *Id.* at n.19.

/ / /

/ / /

The ALJ may rely upon a vocational expert's testimony rather than the *DOT* when the issue is "complex," 20 C.F.R. §§ 404.1566(e), 416.966(e), or when "the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Such evidence includes available job data and a claimant's specific limitations. *Id.* The decision to use a vocational expert is reserved for the Commissioner. 20 C.F.R. §§ 404.1566(e), 416.966(e).

The Commissioner notes that two of the three jobs identified by the ALJ at step five, cashier II and agricultural sorter, are not suitable for a person with Holt's limitations. Cashier II requires a GED Reasoning level of 3, while the ALJ's RFC finding allowing for the performance of one to two step tasks limits Plaintiff to jobs with a GED Reasoning level of 1 or 2. Agricultural sorter is improper because it is a "light" job, but the ALJ's RFC limits Holt to sedentary work. Tr. 16-17.

The Commissioner contends the ALJ correctly identified the Final Assembler job, which is sedentary, requires no stooping or other postural limitations, and has a Reasoning Level 1. Tr. 20, Final Assembler, *Dictionary of Occupational Titles,* 713.687-018, *available at* 1991 WL 679271.

Holt contends that Social Security Ruling (SSR) 96-9p provides that if a person is limited to unskilled work at the sedentary level, and precluded from stooping, that person will normally be found disabled at step five because the occupational base for sedentary work will be significantly eroded. Plaintiff essentially argues that SSR 96-9p directs a finding of disability when a claimant is limited to unskilled sedentary work with no stooping. SSR 96-9p provides in relevant part:

Page 23 - FINDINGS AND RECOMMENDATION

> **PURPOSE:** To explain the Social Security Administration's policies regarding the impact of a residual functional capacity (RFC) assessment for less than a full range of sedentary work on an individual's ability to do other work. In particular, to emphasize that:
>
> . . .
>
> 2. However, a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of "disabled." If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do , considering age, education, and work experience.
>
> . . .
>
> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

SSR 96-9p.

Plaintiff contends that the *Dictionary of Occupational Titles (DOT)* describes 137 sedentary unskilled jobs, of which 131 are described as requiring no stooping. Essentially Plaintiff asserts that the *DOT* conflicts with SSR 96-9p regarding the availability of sedentary unskilled work that requires no stooping. Plaintiff argues that when a reliable source of occupational information, like the *DOT* or the testimony of a VE, conflicts with the Social Security Agency's policies, the Agency's policies control, citing Social Security Ruling 00-4p from the Social Security Program Operations Manual System (POMS). However, POMS

constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ. *Lockwood v. Commissioner Social Sec. Admin.,* 616 F.3d 1068, 1073 (9th Cir. 2010). Moreover, the ALJ complied with SSR 96-9p by consulting with a VE "where [as here] the individual is limited to less than occasional stooping." SSR 96-9p.

Holt argues that SSR 96-9p is based on applying 20 C.F.R. § 404, Subpart P, Appendix 2 (the grids) as a framework. He asserts that any vocational expert testimony contrary to the framework of the grids must be rejected, citing *Swenson v. Sullivan,* 876 F.2d 683 (9th Cir. 1989). In *Swenson* the Ninth Circuit held that "[u]nder no circumstances may a vocational expert's testimony supplant or override a disability conclusion dictated by the Guidelines." *Lounsbury v. Barnhart,* 468 F.3d 1111, 1116 (9th Cir. 2006). Plaintiff does not, and cannot argue that the Guidelines direct a finding of disability because Plaintiff has both exertional and nonexertional limitations. The ALJ properly found Holt has the nonexertional impairment of depression, and therefore was required to consult the VE. *Thomas v. Barnhart,* 278 F.3d 947, 960 (9th Cir. 2002).

The ALJ's step five determination is supported by substantial evidence and should be affirmed.

/ / /

/ / /

/ / /

/ / /

/ / /

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be affirmed and this matter should be dismissed. A final judgment should be prepared.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no Objections are filed, review of the Findings and Recommendation will go under advisement on that date. If Objections are filed, a response to the objections is due fourteen (14) days after being served with a copy of the Objections, and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 4th day of June, 2015.

Honorable Paul Papak
United States Magistrate Judge